UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RED HEAD, INC., | No. C-08-5703 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND FOR WRIT OF ATTACHMENT** |
| FRESNO ROCK TACO, LLC, | |
| Defendant. | **(Docket Nos. 7, 9)** |
| _____/ | |

Plaintiff Red Head, Inc. ("RHI") has filed suit against Defendant Fresno Rock Taco LLC ("Rock Taco") for, *inter alia*, trademark infringement and breach of contract. At the time that RHI filed its complaint, it also filed two ex parte applications seeking temporary restraining orders ("TROs"), and this relief was granted in part by Chief Judge Walker, acting as the general duty judge. *See* Docket No. 17 (order, filed on 12/24/08). In his order, Chief Judge Walker also set a hearing before the undersigned, as the presiding judge, as to whether a preliminary injunction continuing the TROs should issue. This Court held the hearing on December 31, 2008. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, hereby **GRANTS** in part and **DENIES** in part the relief sought by RHI.

## I. FACTUAL & PROCEDURAL BACKGROUND

On or about December 7, 2006, RHI and Rock Taco signed an agreement pursuant to which RHI granted to Rock Taco a license to use certain trademarks and trade dress as well as the name and likeness of Sammy Hagar at a restaurant to be operated by Rock Taco called the "Cabo Wabo Cantina." *See* License Agreement § 1 (granting license); License Agreement § 31 (defining

"Property" licensed). According to RHI, Rock Taco breached the agreement by, *e.g.*, failing to pay the royalties owed, refusing to allow an audit, providing poor quality goods and services, and failing to pay employees and vendors. *See* Compl. ¶ 22 (describing breaches). Accordingly, on or about November 6, 2008, RHI notified Rock Taco that it was in breach and gave it until November 14, 2008, to cure. *See* Winslow Decl., Ex. A (letter, dated 11/6/08, from RHI's counsel to Rock Taco). RHI stated that, if there were a failure to cure, then the agreement would be terminated as of November 14, and, under the agreement, upon termination, Rock Taco had only thirty days (*i.e.*, until December 14, 2008), to discontinue use of any of the property at issue. *See* License Agreement § 6.3(c)(i). RHI claims that Rock Taco did in fact fail to cure, and so, on December 15, 2008, RHI sent a letter to Rock Taco confirming that, as of December 14, the license had terminated and use of the trademarks, trade dress, and Mr. Hagar's name and likeness was barred.

RHI has presented evidence that, as of December 21, 2008, Rock Taco was still using the property at issue in spite of the termination of the agreement. *See* Binder Decl. ¶ 4 (noting that the "the menu had been changed from the Cabo Wabo branded menu to a new 'Memphis Blues' menu" but adding that "[a]lmost all of the Cabo Wabo trademarks and trade dress, and the name and likeness of Sammy Hagar, . . . are still displayed and in use at the restaurant as of [December 21], with the exception of a handful of posters"). Rock Taco claims that, within a several days, *i.e.*, by December 24, 2008, it had stopped use of all of the property, *see* Barbis Decl. ¶ 39 (stating that the transition to Memphis Blues Barrel Room was completed before December 24). However, as of December 27, 2008, it appears that at least one trademark was still being used to a limited extent. *See* Church Decl. ¶ 3 (noting that there was still a Cabo Wabo logo on the floor). Furthermore, at the hearing on the preliminary injunction motion, RHI argued that protected marks are still visible to the public on, *e.g.*, receipts and computer screens. RHI thus asks for a preliminary injunction barring Rock Taco from using any of the Cabo Wabo trade marks and trade dress and the name and likeness of Mr. Hagar. RHI also seeks to enforce its contract rights to audit Rock Taco's books to determine royalties owed for October, November, and December 2008. Finally, RHI asks for a right-to-attach order based on Rock Taco's failure to pay royalties in excess of $62,000 due through September 2008.

## II. DISCUSSION

A. Preliminary Injunction

The Court addresses first RHI's request for a preliminary injunction barring Rock Taco from further use of RHI's trademarks and trade dress and the name and likeness of Mr. Hagar.

> "The standard for granting a preliminary injunction balances the plaintiff's likelihood of success against the relative hardship to the parties." [The Ninth] [C]ircuit has recognized two different sets of criteria for preliminary injunctive relief. Under the traditional test, a plaintiff must show: "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." The alternative test requires that a plaintiff demonstrate "either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. They are not separate tests but rather outer reaches of a single continuum."

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. United States Dep't of Agriculture*, 415 F.3d 1078, 1093 (9th Cir. 2005).

   1. Balance of Hardships

In the instant case, Rock Taco has not shown that it would suffer any harm if the Court were to issue the preliminary injunction sought by RHI. Indeed, Rock Taco has disavowed that it intends to use the property at issue any longer, having made the decision to transition the restaurant from the Cabo Wabo Cantina to the Memphis Blues Barrel Room. *See* Barbis Decl. ¶¶ 38-39. In contrast, RHI would suffer significant hardship if no preliminary injunction were to issue. Rock Taco does not challenge the termination of the agreement by RHI (whether for valid or invalid reasons); thus, if Rock Taco were to continue to use either the Cabo Wabo trademarks and trade dress or the name and likeness of Mr. Hagar, then there would be a likelihood of consumer confusion. Unauthorized use of protected trademarks and other intellectual property inflicts presumptive irreparable injury upon the owner. *See Metro Pub. v. San Jose Mercury News*, 987 F.2d 637, 640 (9th Cir. 1993) ("Once the plaintiff has demonstrated a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted.").

Rock Taco argues, however, that RHI will not suffer any real hardship in the absence of a preliminary injunction because Rock Taco has already decided to stop using the property at issue. In other words, Rock Taco contends that the request for preliminary injunctive relief is moot. *See* Opp'n at 10 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Based on the representations at the hearing, however, the Court concludes that there is sufficient risk that there is or may still be some use of the property at issue that the request for relief is not moot. For example, Rock Taco admitted at the hearing that there are still Cabo Wabo logs on the floor of the restaurant which have not yet been removed and cannot permanently be "removed" until the floor is resurfaced with concrete. While the Court accepts Rock Taco's representation that it has covered the logos on the floor during business hours when the restaurant is open to the public, there is still some danger that the logos could be displayed, even if only inadvertently, in the absence of an injunction. In addition, RHI represented at the hearing that trademarks were still being used on receipts and computers, and Rock Taco was not able to make any representation to the contrary. Finally, although Judge Walker ordered that the restaurant not operate until all trademarks and protected property were removed, *see* Docket No. 17 (Order at 5) (providing that "Defendant shall immediately cease operations of the Fresno Cabo Wabo Cantina until it demonstrates that it has removed and ceased use of all of plaintiff's intellectual property"), it appears that Rock Taco continued to operate in violation of the TRO. Together with the fact that it failed to comply with the contractual deadline for ceasing all use of the protected marks, the Court concludes there is a sufficient likelihood of continued noncompliance to overcome Rock Taco's claim of mootness.

In sum, RHI's request for preliminary injunctive relief is not moot, and the balance of hardships tips strongly in its favor.

2.  <u>Serious Questions on Merits</u>

RHI has adequately demonstrated that there are serious questions on the merits with respect to its intellectual property and related claims. There is evidence (1) that RHI terminated the agreement with Rock Taco for valid grounds (*e.g.*, failure to pay royalties, refusal to allow an audit, and failure to pay employees and vendors), *see* Ravina Decl. ¶¶ 4-5 (discussing failure to pay royalties); Salem Decl. ¶ 5 (discussing permission to audit for a limited period only, *i.e.*, August 29,

4

2008, through the end of September 2008); Binder Decl. ¶ 2 (discussing failure to pay for sound and lighting services); (2) that, after RHI terminated the agreement on November 14, 2008, Rock Taco had only thirty days (*i.e.*, until December 14, 2008), to discontinue use of any of the property at issue, *see* License Agreement § 6.3(c)(i); and (3) that, after December 14, Rock Taco continued to use the property. *See* Binder Decl. ¶ 4.

In its opposition, Rock Taco argues that RHI has not established a likelihood of success on the merits. *See* Opp'n at 12 (arguing that Rock Taco was entitled to rescind the agreement because it was, in actuality, a franchise agreement which failed to comply with California law; also arguing that RHI breached the agreement first, thus excusing Rock Taco's nonperformance). While the merits of these responses and counter-responses must await trial, the Court noted at the hearing herein that there was no evidence presently before the Court that Rock Taco had communicated any assertion of a breach by RHI excusing performances by Rock Taco *prior* to the instant dispute initiated by RHI. Thus, there may well have been at least a partial compromise and settlement agreed to by Rock Taco (for RHI's alleged breaches) prior to accrual of the unpaid royalties at issue. Furthermore, the fact that Rock Taco decided to issue a check to RHI for the amount of the accrued royalties Rock Taco may well be considered an admission on the part of Rock Taco that it owed royalties to RHI notwithstanding any prior behavior of RHI. Thus, while Rock Taco's assertion of breach has not yet been squarely answered, at the very least, RHI has demonstrated there are serious questions raised on the merits of its claims. Moreover, there appears to be no excuse permitting Rock Taco from preventing RHI from conducting an audit as it is authorized to do under the agreement between the parties. *See* License Agreement § 9(c) (giving RHI the right "to examine, audit and copy such books of account, records and all other documents and material in [Rock Taco's] possession or control with respect to this Agreement and to make summaries thereof").

Since the balance of hardship tips strongly in RHI's favor, RHI need only demonstrate serious questions on the merits, which it has done.

3.  Summary

Because the balance of hardships tips strongly in RHI's favor and because RHI has adequately shown that there are serious questions on the merits on the intellectual property and

related claims that have been asserted, the Court concludes that a preliminary injunction is appropriate. The exact terms of the preliminary injunction are described below.

B.  <u>Right-to-Attach Order</u>

In its papers, RHI sought not only a preliminary injunction to bar Rock Taco's use of the Cabo Wabo trademarks and trade dress, and name and likeness of Mr. Hagar, but also a right-to-attach order, which would permit RHI to place an attachment lien on Rock Taco's property and then levy on the property under California Code of Civil Procedure § 481.010 *et seq.* At the hearing, RHI indicated that it was willing to forego that specific relief so long as the Court would fashion some sort of remedy that would give RHI security that it would be paid by Rock Taco should RHI ultimately prevail on the merits.

The Court concludes that, even if RHI could establish the right to a writ of attachment,[1] it would make little sense to proceed in that fashion because a levy upon Rock Taco's property would likely impose a burden on Rock Taco that could strangle its new business. In light of the apparent financial difficulties suffered by Rock Taco (as asserted by RHI), it is ultimately in the interest of both parties for Rock Taco to succeed as an ongoing business. The Court therefore considers whether, pursuant to its equitable powers, RHI is entitled to a preliminary injunction that would give it some financial protection in this litigation.

---

[1] To obtain a writ of attachment under California Code of Civil Procedure § 484.090, the plaintiff must establish all of the following:

(1)  The claim upon which the attachment is based is one upon which an attachment may be issued.

(2)  The plaintiff has established the probable validity of the claim upon which the attachment is based.

(3)  The attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based.

Cal. Code Civ. Proc. § 484.090(a).

In the case at bar, while RHI has established serious questions on the merits, it is a closer question as to whether RHI has established that it will probably prevail. The dispute appears to be fact intensive. Because the Court issues interim relief under its equitable powers sufficient to protect RHI, *see* Fed. R. Civ. P. 65, it need not reach the question whether RHI meets the legal entitlement to attachment under California law.

The Ninth Circuit has specifically held that, in certain circumstances, a court has the authority to issue a preliminary injunction where only money damages are sought. *See generally Hilao v. Estate of Marcos*, 25 F.3d 1467 (9th Cir. 1994). According to the Ninth Circuit, "a district court has authority to issue a preliminary injunction where the plaintiff[] can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant or that defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment." *Id.* at 1480. In the instant case, the Court concludes that there is adequate evidence of impending insolvency on the part of Rock Taco.

First, Rock Taco did not have sufficient funds on November 3, 2008, for a check that it had issued in the amount of $27,689.29 representing payment to Mr. Hagar for his appearance. *See* Ravina Decl. ¶ 3. On or about November 5, 2008, Rock Taco stopped payment on another check in the amount of $62,257.11 representing accrued royalties owed to RHI. *See* Ravina Decl. ¶ 4. Rock Taco contends that it stopped the payment of royalties to RHI because RHI and Mr. Hagar had caused damages to Rock Taco. However, the fact of the matter is that Rock Taco did issue a check to Mr. Hagar which was returned for insufficient funds. *See* Ravina Decl. ¶ 3. It is thus likely that Rock Taco was not able to pay a check in the amount of $62,000, issued just days later, and that that was the reason why payment was stopped (*i.e.*, and not because of breaches of the agreement by RHI).

Second, there is evidence that Rock Taco has not been able to pay one of its contractors for services rendered. *See* Binder Decl. ¶ 3 (claiming that, as of December 21, 2008, he is owed approximately $78,000). Rock Taco claims that it has not paid this particular contractor because, *inter alia*, the contractor overbilled Rock Taco and did not install equipment properly. *See* Barbis Decl. ¶¶ 20-21. While this claim is not necessarily without merit, it is questionable in light of the evidence of insufficient funds cited above. Furthermore, the contractor claims that Rock Taco allowed the contractor to remove certain equipment installed in order to reduce the debt owed, suggesting some financial stress. *See* Binder Decl. ¶ 8.

Third, there is evidence that Rock Taco has had a precipitously declining income. A limited audit that RHI was able to conduct indicated that Rock Taco had generated $650,000 in September

2008 but then only $400,000 in October 2008 and only $250,000 as of November 20, 2008. *See* Salem Decl. ¶ 7. The same audit also reflected that "the accounts payable of Rock Taco were getting older and Rock Taco was not paying its debts as they came due." Salem Decl. ¶ 7.

Even if the above evidence were not sufficient to establish impending solvency, Ninth Circuit law also allows for a preliminary injunction where a "defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment." *Hilao*, 25 F.3d at 1480. Although the Court cannot at this juncture conclude that Rock Taco has engaged in such conduct, it is notable that Rock Taco has loaned approximately $200,000 to other entities, which are apparently affiliated with Mr. Barbis, and further has made payments to Mr. Barbis personally (in September 2008). *See* Salem Decl. ¶ 7. In a declaration, Mr. Barbis claims that he has "in no way diverted funds away from Fresno Rock Taco LLC," Barbis Decl. ¶ 35, but he fails to justify the above loans and payments.

Based on the above evidence, the Court concludes that a preliminary injunction is warranted. The terms of this portion of the preliminary injunction are described below.

### III. CONCLUSION

For the foregoing reasons, RHI's motion for a preliminary injunction is granted but its request for a right-to-attach order is denied. Accordingly, for the foregoing reasons, it is hereby ordered as follows:

1.  Pending further order of this Court or final adjudication on the merits, Rock Taco, all of its officers, members, owners, agents, representatives, servants, and employees, and all those acting in concert or privity with them who receive actual notice of this order are restrained and enjoined from:

    A.  Publicly displaying any of RHI's intellectual property, including without limitation the Cabo Wabo trademarks and trade dress and the name and likeness of Sammy Hagar;

    B.  Publicly displaying any trademark or trade dress that imitates or is confusingly similar to the Cabo Wabo trademarks and trade dress, or that is likely to cause confusion, mistake, deception, or public misunderstanding as to the origin of Rock Taco's goods and services or their connection to RHI; and/or

1  C. Transferring; conveying, assigning, pledging, selling, encumbering, changing ownership, vesting of title to, or otherwise disposing of any assets held in the name of Rock Taco other than in the ordinary course of business as provided below.

2. Rock Taco shall continue (or establish if not already established pursuant to the TRO issued by Chief Judge Walker) an account for the purpose of segregating any monies generated from the operation of the Fresno Cabo Wabo Cantina or any successor restaurant, including but not limited to the Memphis Blues Barrel Room, located at the Village of Granite Park, 4000 North Cedar, Fresno, California and shall provide an accounting of all assets, including but not limited to all personal property assets, including monies, from August 29, 2008 through December 31, 2008.  Rock Taco shall deposit all cash on hand and all future monies generated from the operation of the Fresno Cabo Wabo Cantina or successor restaurant into the account so established and shall be prohibited from making any expenditures from this account except as follows:

   A. Payment of any payroll expense (including fringe benefits and taxes and premiums for workers' compensation and unemployment insurance) falling due in the ordinary course of business, but not excluding any payment to Milt Barbis or any immediate relative;

   B. Payment for goods and services for use in the normal course of business but excluding any payments to Milt Barbis, any immediate relative, or any business owned (in part or whole) or controlled (in part or whole) by any such persons;

   C. Payment of taxes if payment is necessary to avoid penalties which will accrue if there is any further delay in payment; and/or

   D. Payment of reasonable legal fees and reasonable costs and expenses required for Rock Taco's representation in the action.

3. Rock Taco shall permit RHI to conduct an audit of Rock Taco's books and records to determine royalties owed for the months of October, November, and December 2008 and to ensure compliance with paragraph 2 above.

This preliminary injunction is secured by the $10,000 bond already posted by RHI. Paragraphs 2 and 3 of this preliminary injunction may be lifted upon Rock Taco's posting of an adequate undertaking in the amount of $117,000. The amount of $117,000 represents accrued royalties through September 2008 and estimated attorney's fees and costs.[2] Although Rock Taco has argued that the amount should be less than $117,000, an undertaking in that amount is fair and reasonable given that there appears to be at least $62,000 in royalties owed through September 2008, not including royalties still owed for the months of October through December 2008, which could easily double the amount owed.

IT IS SO ORDERED.

Dated: January 5, 2009

_____
EDWARD M. CHEN
United States Magistrate Judge

---

[2] Attorney's fees and costs are recoverable under the parties' agreement. *See* License Agreement § 19 ("The non-prevailing party in any legal action between the parties arising from or related to this agreement, whether instituted by Licensor or by Licensee, shall promptly reimburse the prevailing party for all costs and expenses (including reasonable attorneys' fees) incurred in connection therewith.").